## Lukash v. American Car and Foundry Company.

*Workmen's compensation—Commutation—Remarriage of widow.*

1. Where a widow has been awarded, under a compensation agreement, weekly payments of $12 for herself and children for 300 weeks, and before the expiration of that period the payments to the amount of $9.14 per week are commuted for the remainder of the 300-week period, and the lump sum payment has been made and applied, with the consent of the Orphans' Court, in paying for a home for the widow and children, the title being taken in the name of the widow and guardian of the children, and thereafter the widow remarries before the end of the 300-week period, the payment of the commutation discharges to that extent the obligation of the employer.

2. The residue of the weekly payments for the remainder of the 300-week period are to be paid as follows: To the widow for one-third of the period, and to the guardian for the use of the children for the remaining two-thirds of the period.

3. The defendant's further obligation is payment subsequent to the ending of the 300-week period in accord with the compensation agreement until the youngest child reaches sixteen.

Appeal by defendant from decision of Workmen's Compensation Board. C. P. Columbia Co., Sept. T., 1925, No. 273.

*C. W. Dickson*, for claimant; *W. E. Elmes*, for defendant.

EVANS, P. J., Dec. 6, 1926.—There is no dispute about the material facts. Joseph Lukash died as a result of an industrial accident, while in the employ of the defendant company, June 17, 1921. He left to survive him a widow, Helen Lukash, and five minor children. A posthumous child was born Sept. 11, 1921, and died April 1, 1922.

Under date of Aug. 9, 1921, a compensation agreement was executed and approved in due course, by which it was agreed to pay compensation as follows:

$12 per week from June 27, 1921, to March 28, 1927, end of
   300-week period........................................$3600.00
$7 per week from March 28, 1927, to April 1, 1931......... 1465.00
$5 per week from April 1, 1931, to Sept. 16, 1934.......... 903.56
$3 per week from Sept. 16, 1934, to Dec. 25, 1936.......... 356.58

Total amount to be paid because of the death of Joseph
   Lukash, subject to possible modification as provided
   by the Workmen's Compensation Acts..............$6325.14

These were the maximum compensation rates fixed by section 307 of the Act of June 2, 1915, P. L. 736.

The payment provided for in the compensation agreement of $12 per week from June 27, 1921, to March 28, 1927, the 300-week period, amounting to $3600, was to be made to Helen Lukash, the widow, for the use of herself and minor children.

Compensation was paid to the widow for herself and minor children from June 27, 1921, to April 10, 1922, a period of 41 weeks, at $12 per week, amounting to the sum of $492.

Upon petition of the widow and the duly appointed guardian of the children, the board granted commutation at the rate of $9.14 per week for a period of 259 weeks, that is, until the end of the 300-week period, March 28, 1927, the amount of money so commuted being $2367.26, with a present or commuted value of $2100.59. This latter amount was paid by the defendant May 31, 1922, to Helen Lukash, the widow, and the guardian of the minor children, and used by them, with the permission of the Orphans' Court, in paying off the balance of purchase money owing on the home in which Joseph Lukash, the decedent, and his family lived at the time of his death, and in the purchase of additional land for the use of the widow and minor children, title to the same being taken in the name of the widow and guardian of the minor children jointly.

The widow remarried Oct. 8, 1922. Dec. 27, 1922, the defendant petitioned the board for a modification of the compensation agreement on the ground of a material change in the status of the parties. The petition asserted that a gross injustice and inequity would result unless the defendant be permitted either to suspend payments or to continue payments in a greatly reduced amount for a sufficient time to fully reimburse itself for the lump sum payment made in compliance with the compensation order.

The referee found as a fact (13th finding) that the claimants had been overpaid on the date of remarriage of the widow the difference between $2666.95 and $1702.43, or $964.52. He further ordered and directed that payments of compensation be resumed Aug. 11, 1924, as follows:

To the guardian of Rose, Joseph, Bornick and Helen Lukash, compensation at the rate of 50 per cent. of $20, or $10 per week, from Aug. 11, 1924, to Dec. 19, 1925, the date on which Rose Lukash will have arrived at the age of sixteen years, a period of 70 5/7 weeks, and amounting to $707.14.

To the guardian of Joseph, Bornick and Helen Lukash, compensation at the rate of 40 per cent. of $20, or $8 per week, from Dec. 19, 1925, to March 28, 1927, and of the 300-week period, or for 80 4/7 weeks, and amounting to $644.57.

From this order the defendant appealed, and on Aug. 5, 1925, the board affirmed the same, whereupon appeal was taken to this court.

Counsel for the defendant challenges the correctness of the foregoing order with respect to the payments ordered to be made from Aug. 11, 1924, to March 28, 1927, end of the 300-week period. The contention of the defendant's counsel is that, from April 3, 1924 (end of one-third of the 233 weeks remaining after the remarriage of the widow to the end of the 300-week period), to Dec. 19, 1925 (when Rose reached sixteen), 88 20/21 weeks, the guardian of the children would ordinarily be entitled to receive $9 per week, and from Dec. 19, 1925, to March 28, 1927 (end of 300-week period), 67 2/7 weeks, $7 per week.

But, upon application of the widow and guardian, the sum of $9.14 per week has already been taken (commuted) from this period (April 3, 1924, to March 28, 1927); there is, therefore, nothing further to be paid until March 28, 1927, end of the 300-week period.

On the other hand, the contention of the claimant's counsel is that the referee properly modified the compensation agreement by allowing no further compensation to the widow, but directing that the compensation to the children be paid from Aug. 11, 1924, the end of one-third of 233 weeks, the balance of the 300-week period after the remarriage, according to the terms of the Compensation Act, in the same amount as though a commutation had not been granted.     We do not agree with either of these contentions.

There is no controversy, however, with respect to the payments ordered to be made subsequent to March 28, 1927, the end of the 300-week period, for they are in entire accord with the compensation agreement of Aug. 9, 1921.

The only question involved in this appeal is what amount of compensation, in addition to the amount commuted, if any, should be paid between Aug. 11, 1924 (the correct date being April 3, 1924), and March 28, 1927, end of the 300-week period?

Keeping in mind the following facts:

1. The compensation agreement in the instant case provides for the payment at the rate of $12 per week to the widow, for the use of herself and minor children, for a period of 300 weeks, beginning June 27, 1921, and ending March 28, 1927, amounting to the sum of $3600; and from then on until March 25, 1936, at different rates per week, until the youngest child reaches the age of sixteen.

2. Compensation was paid to the widow, for the use of herself and children, from June 27, 1921, to April 10, 1922, for a period of 41 weeks, at the rate of $12 per week.

3. Upon the joint petition of the widow and guardian, against the protest of the defendant, commutation was ordered of $9.14 per week for 259 weeks remaining of the first 300-week period, viz., from April 10, 1922, to March 28, 1927, in the sum of $2100.59.

4. The said commuted sum was paid to the widow and guardian and applied by them in the purchase of a home and additional land, for the use of the widow and children, with the consent of the Orphans' Court.

5. This commutation caused a reduction in the weekly rate of compensation to be paid from $12 per week to $2.86 per week from April 10, 1922, to March 28, 1927, the remaining 259 weeks, to the end of the 300-week period.

6. Compensation was paid to the widow at this rate, viz., $2.86 per week from April 10, 1922, to Oct. 8, 1922, when she remarried, a period of 26 weeks.

7. There remained 233 weeks' compensation at the rate of $2.86 per week to be paid to the end of the 300-week period, a period covered by the commutation, when the widow remarried, Oct. 8, 1922.

From these facts we conclude:

1. That the widow is entitled to receive compensation under the Act of June 26, 1919, § 307, par. 4, P. L. 642, 648, amending the Act of June 2, 1915, P. L. 736, at the rate of $2.86 per week for (one-third of 233 weeks) 77 2/3 weeks, amounting to the sum of $214.13.     This period expired April 3, 1924.

2. That the guardian is entitled to receive compensation for the children at the rate of $2.86 per week from April 3, 1924, to March 28, 1927, a period of 155 1/3 weeks, end of the first 300-week period.

3. After March 28, 1927, compensation is to be paid to the guardian, as provided by the order of the board, until the youngest child reaches the age of sixteen.

We reach this conclusion from the following authorities: Pomezin v. Hudson Coal Co., 22 Luzerne Legal Reg. 114; Ferdisko v. Trimble & Sons Co. et al., 272 Pa. 125; Lubanski v. D., L. & W. R. R. Co., 81 Pa. Superior Ct. 538.

Lukash v. American Car and Foundry Company.

In the Pomezin case, *supra*, the employee died as the result of a compensable injury June 5, 1919, leaving a widow and four minor children, all under the age of sixteen.

The agreement provided for the payment of $12·per week to the widow for 300 weeks, and to pay the guardian of the children after that period $9 per week until the oldest child became sixteen, decreasing until the youngest child became of that age.

May 6, 1920, the widow petitioned the board for commutation. It was allowed to the extent of $6.94 per week to the end of the 300-week period. The defendant company paid the commuted lump sum of $1500. Thereafter, until Oct. 5, 1921, the weekly payments made to the widow were reduced $6.94 to $5.06 in order to make the company whole because of the commutation.

The widow remarried Oct. 5, 1921, whereby on that date the right to any further compensation (the Act of 1919 not applying) *ipso facto* ceased, and the guardian's right to $9 per week accrued by operation of law.

The company petitioned the board for a modification of the agreement to the end of the 300-week period, contending that the commuted amount of $6.94 per week should be taken from $9 per week to the end of the 300-week period, leaving but $2.06 per week to be paid to the guardian from the date of remarriage to the end of the 300-week period. The board refused the petition and ordered the company to pay from the date of remarriage to the end of the 300-week period at the rate of $9 per week.

The defendant company appealed. This, the court said, is error. President Judge Fuller, at page 116, says: "Inasmuch, however, as the original agreement contemplated a weekly payment of $12 until the end of 300 weeks, the proper equity will be subserved, not by reduction to $2.06, as requested, but by continuing the reduction to $5.06, thus taking the deduction of $6.94 from $12, as heretofore, instead of from $9. Thereby the original contemplation will be fulfilled without prejudice to any one concerned, but otherwise it would be infringed."

In the Ferdisco case, *supra*, Mr. Justice Sadler says: "The doubt which has arisen in this case, as to the effect of the proviso, is largely caused by the language of the sentence following it, which reads: 'If the compensation payable under this section to any person shall, for any cause, cease, compensation to the remaining persons entitled thereunder shall thereafter be the same as would have been payable to them had they been the only persons entitled to compensation at the time of the death of the deceased.' The use of the word 'thereafter' has been taken by the court below as conclusively indicating that the award to the minors shall begin as of the date of the remarriage and the making of the commuted payment to the widow; but the section as a whole must be considered in searching for the legislative purpose. The clause in question is the same as that appearing in paragraph 9, section 307, of the Act of 1915. When there used it was appropriate, for all interest of the widow ceased with the remarriage, and the children acquired from that date the right to the entire award. Here the situation differs, for the widow receives a sum for a further period, but for use of the entire family, as if she had not remarried. A contrary construction would lead to increased burdens upon the employer, which the act shows no purpose to assess."

In the Lubanski case, *supra*, a widow and two children under sixteen survived. The agreement providing for payment to the widow for 300 weeks (to Jan. 25, 1924) at $10 a week until Nov. 24, 1922 (when a child became sixteen), and at $9 a week for the rest of the 300 weeks; and thereafter at $3 a week until 1930, when the other child reached sixteen.

Lukash v. American Car and Foundry Company.

The widow, desiring to return to "Poland," petitioned the board for commutation. The board allowed commutation for the remaining 164 weeks of the 300-week period at $4 per week. That payment reduced the weekly liability from $10 to $6 until Nov. 24, 1922, and from $9 to $5 for the rest of the 300-week period. The appellant paid $6 a week until Feb. 8, 1921, at which date the dependents became non-resident aliens.

Then a dispute arose as to how much appellant should continue to pay. The board decided the change from resident to non-resident aliens reduced the compensation "to two-thirds of the amount provided in each case for residents," as provided in section 310 (Act of June 2, 1915, P. L. 736, 746), and that, instead of continuing to pay $6 weekly, only two-thirds thereof should be paid (with like reduction of the other sums payable under the agreement). The appellant challenges that application of section 310 and asserts it need only pay two-thirds of the weekly instalments specified in the agreement, i. e., now two-thirds of $10, or $6.67, and as it has already paid $4 a week in commutation of that weekly liability for the remainder of the period, it may deduct that sum from the $6.67 and make its present weekly liability only $2.67. Mr. Justice Linn, at page 541, says: "We all agree that that position cannot be sustained. . . . We find nothing in the statute requiring a dependent to repay compensation lawfully received, yet partial repayment is what appellant desires. . . . Finding no support in the statute for the suggestion that appellant may get back a part of the money paid at a time when it is conceded to have been properly paid and received, we must overrule the assignment of error."

In the instant case the board commuted $9.14 of the $12 per week compensation agreed to be paid to the widow for the use of herself and children from April 10, 1922, to March 28, 1927. The amount commuted was $2367.26, with a present payable value of $2100.59. This latter amount was paid by the defendant to the widow and the guardian for the children and, with the consent of the Orphans' Court, applied in paying for a home and purchasing land for the widow and children, title being taken in the name of the widow and guardian jointly. This surely discharges the defendant's obligation to the widow and minor children to the extent of the commutation. The interests of the children have been amply protected and safeguarded by the Orphans' Court.

In the more recent cases of Rose Di Lorenzo, widow, and Lawrence Savings and Trust Co., guardian of minor children of Gugliemo Di Lorenzo, claimant, v. Carnegie Steel Co., defendant, not yet reported in the published reports, Chairman Walnut recognized the inequity of duplicate payments, for he there says: "In brief, the principle of this latter case (Kyler v. Ford Collieries Co., 11 Dept. Reps. 9) is to the effect that where payments of compensation due a widow on account of herself and children for the three hundred weeks are commuted, all parties in interest being parties to the proceeding, this lump sum payment when made is in lieu of instalments for the period in the amount commuted and disposes to that extent of the obligation of the employer (Lubanski v. D., L. & W. R. R. Co., 81 Pa. Superior Ct 538). The further obligation of the employer, therefore, is to pay the residue of the weekly instalments as specified by the act."

Assuming that the board's decision is subject to appeal, we decide as a matter of law that a modifying order should be allowed, leaving $2.86 per week payable to the guardian from April 3, 1924, to March 28, 1927, when payments will be resumed to the guardian as directed by the board until the youngest child reaches the age of sixteen.

And now, Dec. 6, 1926, the record is accordingly remitted, to the end that an order of modification be made in accordance with the views herein expressed.

From R. S. Hemingway, Bloomsburg, Pa.